This is Haas v. Storey I'm going to show them something. Counsel? If it pleases the court, my name is Haas Sibyuk. I represent Mike Storey and Storey Lambie. We are the appellants in this case. Just one point I wanted to make. I have a really bad ear infection, so if I ask you to repeat your question, I apologize. I just wanted to let the court know. Thanks for letting us know. Yeah, otherwise you're probably thinking that I'm ignoring your questions, but really not. If we look at this case, if we start from the beginning, Haas' mobile home was destroyed by a tree. A tree fell on the mobile home and she contacted her insurance company. She had an attorney at the time. The attorney contacted Mr. Storey because Mr. Storey had background in mobile homes. And that's really how Haas and Storey really came together. Storey said, you know, I'll clean out the debris and all that. There's a lot of facts within this case dealing with the transaction and how they first started going. Haas purchased a mobile home at one point in time. Where they signed a contract that says, Haas says, I will pay you $32,000 and you shall deliver the mobile home to my location. The bank paid money over to, Haas goes to the bank, and the bank releases the funds. Now, you know, we're not disputing the fact that Mr. Storey got the funds. And I think the court makes it known that, you know, Mr. Storey got the funds of $24. After Mr. Storey received the $24 fine, which was the first installment in this contract, Mr. Storey was supposed to perform the contract. The court finds, and one of the first things that the court finds in their judgment is that Mrs. Haas breached the contract. So the court goes further and awards my client damages in the amount of $7,800 to my debtor. And so Mrs. Haas starts out and breaches the contract. So Mr. Storey has this mobile home that he purchased based upon the direction of Mrs. Haas to provide her with this mobile home. So he goes out and buys the mobile home. He now has stopped with the mobile home. He tries to work things out with Mrs. Haas, gets attorneys involved, can't get it, can't resolve it. So he follows what, in the UCC, he has the opportunity to cover his losses and sell it to a secondary party. So he goes out and sells it to a secondary party. Now he has a problem. He has the $24 fine. He also has the money from the secondary buyer. So he sold it twice. He sold it twice. And he kept the loan proceeds. He did keep the loan proceeds. Now, you know, and the question that it comes back to is who does he pay? Does he pay the bank or does he pay Mrs. Haas? Because if he pays Mrs. Haas, the bank's going to sue him. If he pays the bank, he's still liable. And he was able to resell it because he didn't record the bank's lien. I believe that if you look at the, if you look at the, you know, there's a case I signed with you where National Bank of Republic v. Wells, Jackson. Under a conditional sales contract, which is what we believe we have, a vendor retains title in the personal property until full payment is paid by a vendee. So until Mrs. Haas pays the complete contract, she only pays the personal property. Until she pays the complete contract, she is not entitled to possession of that mobile home. Did he ever have title to the mobile home? Huh? Did he ever have title to the mobile home? He did have title. He did? He became title of the mobile home. It would be like a car. You know, you sell a car, go to the dealer. You don't pay the full price. Who has title? Is it the dealer or is it the bank? You know, we believe that Mr. Story still had possessory right and he had the right to possess above the interest of the bank. So if we look at the judgment, count one, the court finds favor of Story with regards to the breach of contract. Count two, it's the bank. You know, the bank is not here. We're not appealing anything with the bank. We believe that the bank should be entitled to funds, and that's why we have not pursued any appeals. Because we believe the bank has the rights, and they have the possessory interest. And I'll address that when I go into, when I talk to you about conversion. But if we look at count two, count two with regards to the cause of action between Haas and the bank, the court says it's barred the bank from collecting the loan. So this is Haas, doesn't owe any money to any bank. He's not obligated in any way, shape, or form based upon that judgment and that count for this money. So the question I pose to the court is, is there is no damage? And that's my belief. And I point to you, it's not only my belief. The trial court even made mention of this. If we look at the trial court's report of proceedings and the motion to reconsider, the court says that, agreed that it failed to award monetary damages in favor of Mrs. Haas. If you'll, you know, the court believed that the language of the consumer, you know, the court was going into the practice and said, the court believed the language of the Consumer Fraud Act was so broad that they could give, that the court could grant injunctive relief. But if you review the Consumer Fraud and Deceptive Practices Act, the only person that is allowed injunctive relief is the state. The state's attorney's office and Illinois Attorney General's office. Those are the only two that are entitled to injunctive relief. No private cause of action can resolve if there's no actual damage. And I paraphrase the court, the trial court, and this is in the last page of the report of the proceedings. It says, I did not enter an order awarding specific monetary damages for the matter alone. Judgment still amounts to an award essentially of zero in direct compensatory damages. The court, the trial court says, you know, there was no award because of poor damage. So if we look at the two causes of action that we're here today to discuss, we're down to conversion and Consumer Fraud and Deceptive Practices Act. If I quickly go through the Consumer Fraud and Deceptive Practices Act, the appellee will argue that there are tons of deceptive practices and there's all these factual obligations. But if you look at the court and the report of the proceedings, the court ignored every action of Mr. Story and any kind of deceptive practices that was alleged by the appellee before the breach of contract because the parties were working together at that point in time. And there was no deception occurred. We look at, but truly, you know, no Consumer Fraud and Deceptive Practices Act can come into play if there's no actual damages. In our view, there is no actual damages in this case. It has to be approximately caused by the deception. You know, if we look at the actual damages, there is no economic damages. There is no, you know, and the appellee notes that the circuit court did award some compensatory damages and therefore can't award penalty damages. But if we look at the motion to reconsider in the report of the proceedings, the court said there is no compensatory damages. It's only conjunctively that the court actually awarded Mrs. Haas. Mrs. Haas is no longer responsible. You know, the court said Mrs. Haas is responsible for the loan. Mr. Story was responsible for the loan. Then you can say there is damages, but that's not what the court did. And, you know, and that's not the decision the court has today. It's either to reverse or affirm, not to modify. But in our, so in our view, because there was no proof of any actual damages, no consumer fraud deceptive practice act can lie in this case. Now, if we look at it, we turn to, and with that thing, we look at attorney's fees. If there's no action for consumer fraud, the court can't award attorney's fees. Because there is no cause of action. You have to prove actual damages. So if we look at the conversion, in order to prove a conversion case, there has to be wrongful, unauthorized control by the defendant over the plaintiff's property. The plaintiff had to have a right of the property on the chattel. And the plaintiff had to have an absolute, unconditional, immediate right of possession that does not depend upon an act to be performed. And I think, you know, I'm sure Mrs. Pills will correct me if I'm wrong, but I believe we both agree that that's the standard. Those are the four steps within a conversion case that have to be proven. Your reliance on DeKalb is misplaced according to your opponent, because in DeKalb, the plaintiff authorized the transaction. And in this case, there was an authorization to use the loan proceeds to sell the mobile, to buy a second mobile home or whatever, and then sell it. I understand your point, but if you look at it, she did authorize him to take her loan proceeds. I believe she did, because she authorized him to take the money, to deposit it into his account to buy a mobile home for her. But he financed another sale. That's because of her breach. She caused her own demise by her breach. Mr. Storey had Mr. Storey, Mr. Storey would have, Mr. Storey's only request was, deliver, remove this gentleman by the name of Donovan off the property, I'll deliver. I'll deliver today. I'll make sure they're taken care of. And I'll perform my actions, perform my acts under the contract. So if she breached, why didn't he just give the money back to the bank instead of using it the way he did? Because it was already used. He bought the mobile home. He didn't have the money at the time. As soon as the money was deposited into his account, and if you look at the trial transcript, the trial transcript says, he went and delivered the money and purchased the mobile home for her benefit, because he was going to deliver the mobile home within a couple of days. So she did authorize him to go out, purchase this mobile home. They agreed upon the exact mobile home that she was supposed to deliver. But because of Mrs. Haas's actions, she breached the contract. So I do understand her point. But if you look at, he bought the home in March. It wasn't until July that the second sale happened. He had it on the market. He had it open for sale. There was many attempts by both sides to try to work out a deal. It could not be accomplished. So Mr. Shorty really did not have money in his possession. It was an enemy of the mobile home. So how does he get the money back? He has to sell the mobile home. If we look at, the whole payment was not made. Again, the courts breached the contract. The case I like, and it's a good analysis of who's the players and what a court has done in kind of a similar situation, is this United States Fidelity versus the United States. And I cite my reply to it. In this case, you have an employer, employee, and the end of the United States. The employer, I believe, employee is Mrs. Haas, United States Bank, and Mr. Shorty is the employer. Mr. Shorty, or in this case, the employer, withheld the taxes from the employee's check. But he didn't deliver it to the United States. The employee could not come back in and sue the employer because the court found that the court did not have an interest and the employee did not have the interest. It's the United States government. The United States government was not going to pursue the employee because it's the employer's obligation to pay this money. And that's the same situation we have. The bank has possession of the interest. I believe the bank had the rights in this case, not Mrs. Haas, because it's the bank's money. Didn't the court order that the damages be applied to the loan obligation, not give it to her? I'm sorry? Didn't the award of damages, the trial court awarded the damages of her $24,500 be applied to her loan obligation to the bank? No. No? No. This is separate. The court said you're paying $25,000 in punitive damages to Mrs. Haas. Mrs. Haas is now obligated and now responsible for the loan. So not only is Mrs. Haas walking away not having to pay the bank, but she's also walking away with $25,000 in punitive damages. Mrs. Story has to pay not only the bank, but also Mrs. Haas, basically the same amount of money. But she still, the court specifically said, there is no cause of action, eliminating any obligations to Mrs. Haas. And that was a cause of action specifically to the bank. So the bank, the bank was obligated to, or any obligation between the bank and Haas are now employed. And that's count two in the judgment. One point I want to make sure I make is, so if we look at actual damages, we've talked about consumer fraud, but all parties agree, this is one thing we both all agree on. I'm sure this is, Phil will correct me if I'm wrong, but punitive damages may not, if I look at both our briefs, all parties agree that punitive damages may not be awarded in the absence of compensatory or actual damages as a matter of law. There is no compensatory or actual damages in this case. Not even nominal damages. The court, even in the court of proceedings, again, said, this is injunctive relief. It essentially is what I granted to Mrs. Haas. So there is no damages. And if we look at black solid dictionary, real substantial, and definition of actual damages, real substantial, just amount of damages and amount awarded to complainant and for actual loss of injury. Thank you. Thank you. Good morning, may it please the court. My name is Erin Phillips. I'm here from the law firm of Jane Unsell, and I represent the underlying plaintiff and appellee in this matter. Some preliminary issues that I would like to address initially. I think it's very important to cut right to the crux of the argument here. The appellant's counsel is correct. I think that we agree in terms of the state of the law here, but the issue is truly whether or not there were compensatory damages awarded. I think that if the court comes to the conclusion that compensatory damages were awarded, then the other issues to be addressed fall in line. I think the most important place to turn to, to look at whether or not there were in fact compensatory damages, right off the bat, is to go back to the court's order. They issued a 14-page order on January the 14th, 2010. And in the court's order, I'm going to What page of the appendix are you on? On the appendix, it would be page 7 that I'm addressing. It begins, I believe, at page 68. And I'm turning to paragraph C, which discusses count 3, the conversion count originally brought from plaintiff against defendant, Story, and Storyland Mobile Homes. When you look to that count, you look to paragraph 1, and I don't mean to read to the court, but I think it's so important here, that it says, The court finds in favor of plaintiff Shannon Hoss and against Michael R. Story and Storyland Incorporation with regard to conversion. Story has converted the $24,500 in purchase price loan proceeds. Judgment is entered requiring Story and Storyland to refund the purchase price loan proceeds in the amount of $24,500 plus pre-judgment interest at a rate of 5% to Stock Bank in satisfaction of the debt to Shannon Hoss. So I believe earlier that the court had questioned appellant's counsel as to whether or not it was in satisfaction of Ms. Hoss' debt. Hang on one second. I still haven't found exactly. You're on page what of the 14, what page? 10 of 14. Oh, I'm sorry. Okay. There's quite a bit of factual explanation in the underlying order as well, due to the fact and sense of nature of this case.  So when you look at that paragraph 1, clearly there the court did, in fact, say that the $24,500 was to be paid over to the bank, not simply to refund the bank, but to eliminate Ms. Hoss' underlying loan obligation. Here Ms. Hoss went out and sought this loan, obtained this loan in March of 2008. From March of 2008 until the court's ruling of January 14, 2010, she remained liable on this loan. Nothing ever interceded. Nothing stopped that in between. She continued to be liable and responsible. She was damaged in the fact that she was responsible for a loan that she had nothing to show for it. Is she currently liable to repay that loan? As of the state of the case today, she is not, because there were also claims against the bank that the plaintiff brought and cross-claims between the bank and Mr. Story. Those claims are not on appeal, and as part of the remedy that the court fashioned below, she is no longer liable on those amounts. Now, turning to that issue, I'd like to also ask the court to look very clearly at the report of proceedings from the underlying motion to reconsider. First of all, most importantly to note is that the motion to reconsider was denied. The motion for rehearing was denied. The trial court affirmed its ruling and believed that it had made the correct underlying decision. And I don't mean to directly oppose what the appellant said, except to the extent that I do believe that he mischaracterized or misphrased what the court said below. If we look at the record, and I don't know if Your Honors have that below you because it's not included in the appendix because it is just the report of the oral argument below, on page 21 of the report of proceedings, the court said that given the strange nature of the proceedings, I agree that the ideal way would have been to enter a judgment for compensatory damages directly between Story and Haas and simultaneously a judgment between Story and the bank for the equitable considerations because of the involvement of all the parties. I set up a judgment which I think places the risk of recover appropriately. I consider that otherwise potentially Ms. Haas would be under the obligation to continue satisfying the debt. My understanding of what the trial court's concern was is that if he entered two separate orders, there would continue to be remaining liability and remaining responsibility, and potentially, in fact, if Mr. Story had been ordered to pay Mrs. Haas and Mr. Story had been ordered to pay the bank, then ultimately the bank could have received a double recovery if he granted those on both counts, the $24,500. My understanding was that Judge Harrison sought to ensure  But to argue that that is not compensatory damages to Ms. Haas, I believe, misses the mark. Additionally, the counsel for appellant has cited no legal authority in the state of Illinois that says that this type of situation where a loan debt is satisfied doesn't constitute compensatory damages. And additionally, I did want to also point out that under the second paragraph of the court's order with respect to the conversion count, the court also directed that if Ms. Haas had made any payments on the loan, that those were to be repaid directly to her, so that once again that the bank would not gain more than what it was owed, that she would have the loan satisfied, and she would have payments refunded to her for any payments that she made. So again, there is a direct reward of compensatory damages. And the same direct reward of compensatory damages is then reiterated under the consumer fraud count. If you turn to page 11 of 14 or A71 of the court's order below, count E addresses the consumer fraud count. And again, under paragraph 2, the court finds the reiterated damages discussed above in the amount of $24,500. The court very clearly lays out that there are damages of $24,500 that have to be repaid, and then goes on to discuss the punitive damages and the attorneys' fees. So this is why I feel that it is so important to first go through that issue, that in fact the court did very clearly set out that the loan satisfaction was damages to plaintiff that she was being awarded. If not, to this date, plaintiff would still remain to be liable for a loan, which we all know that that can be possible simply because you don't obtain the property doesn't mean that your obligation on the loan is relieved. And that's what happened here. Appellant's argument seems to be that it's the bank's money. It's the bank that we owe the money to. It's the bank that gave us the money. But for the fact that Shannon Haas went to the bank, obtained a loan, put up her own personal property and her own credit, her own name on that loan, that money would have never been delivered or provided to Mr. Story. Mr. Story only obtained the loan money by the fact that Shannon Haas obtained the loan first. First Staunton Bank would never have distended him over $24,500 but for the fact that she engaged in the loan process. Did the bank seek payment from your client? The bank did seek payment for some time prior to the trial, yes. And up until the point of time that the trial was heard, there was still a potential of collection activities. I believe that the testimony of the bank's representative below indicated that they were likely going to write off that loan at some point potentially, but simply writing it off the books would not mean that her obligation was relieved. It just meant that it was a bad day. But the court ruled against the bank on their request for a judgment against her. Yes, Your Honor, they did. What the court specifically found was that she, the bank, would no longer be able to seek any collection activities against her. And that is because there is a separate issue here with respect to the way in which the funds were handled when the bank turned the money over to Mr. Story. Those issues aren't on appeal but have to go to the heart of some issues that are intermingled here in terms of the way in which the bank turned the money over without direct assurances that the interest in the property was going to be protected. Ultimately, as we know, the lien was not recorded here, which led to the ability to commit the second sale. Which brings me to another factual point that I would like to correct. The appellant's counsel said that Mr. Story had title to the property underlying. If you look to the court's factual findings below, again, Judge Harrison specifically found that Mr. Story necessarily and directly did not put himself in the chain of title here. And he did not place himself in the chain of title. When the title was signed over from Mr. Story holding the title to the person who ultimately purchased it, a gentleman named Thornton, it was signed over from the company from which he had purchased it in Southern Illinois in March. It went directly from that person who had signed off on the title to the subsequent seller. There was no ability for Mr. Story to retitle the property. And, in fact, Mr. Story attempted to testify at trial below that he had no obligation to place the lien on the title, that he had no obligation to recognize what he had agreed to with the bank because he no longer had a dealer's license. Now, this is directly in contravention to what he had promised the bank, what he told the bank he would do, and what the bank's representative testified to. The bank's representative testified that they had multiple assurances that he would place them in the chain of title and that their $24,500 would be protected. On that compensatory damages, again, would you refer to a certain line of cases or a particular case that you feel is in your favor, that what you've described as compensatory damage has been previously found by a court? I have not found a case that is directly on point, similar factually, because this is such an unusual situation. I would, however, say, though, that the Bill Merrick competitive edge case out of the 7th District in 2004 talks about that you can have unauthorized control over money-backed loan proceeds, which in turn, the compensatory damages issue then flows out to there's a Doe versus Montessori school case, 2nd District, 1997. And in that case, they talk about that the purpose of compensatory damages is to make an injured party whole and restore her to a position she was in before the loss, but not to enable her to make a profit or windfall in the transaction. And I think it's exactly this kind of language that Judge Harrison was attempting to address when he simultaneously said the bank can't recover against you and Mr. Storey has to satisfy your debt. Again, not that Mr. Storey just has to repay the bank, but that Mr. Storey has to satisfy your loan obligation because that was what was going to restore her to the position that she was in prior to the loan proceeds being converted. And that's Doe versus Montessori that I was looking to there. Additionally, I think that that's another important consideration that the court took up with the appellant, is what is truly the conversion here? Judge Harrison, again, went to great lengths in his underlying order to address the fact that the conversion was the conversion of the loan proceeds at the time of the second sale, that the conversion was not the original purchase of the mobile home. At no point has Shannon Fonts ever disputed that she authorized the loan proceeds to be transferred to have a mobile home purchase. What happened was after the original underlying deal was ended and they couldn't come to any agreement there, the money was never refunded. Now, I understand that appellant's counsel says, well, Mr. Storey didn't have the money. And that's true because Mr. Storey testified below that all of the money that was used to purchase the mobile home came directly out of those loan proceeds. He got the $24,500. He gave $17,000 to the mobile home dealer that he purchased it from. So at the point that Mr. Storey sells the mobile home the second time around the beginning of July 2008, he's essentially up almost $50,000, $49,500, $24,500 from the original sale, $25,000 that he received on the subsequent sale. He does not come into the court and avail himself of the court process any time after the original issue in March. Rather, he continues to hold those funds hostage. And that was a specific ruling of Judge Harrison that he said, regardless of whether or not Mr. Storey believed that he had a cause of action on any damages he may have incurred in the breach of contract, which is not before the court on appeal, that specific count truly is not an issue. But what Judge Harrison said there was he never availed himself. He didn't come in and seek any damages, real or imagined was his quote, that Mr. Storey believed he had. Rather, he continued to hold the money and only asserted those counterclaims once she brought her cause of action. When he bought it the first time and he used the bank's money that she got the loan for, was he doing that with her authority? When he purchased the original mobile home? Yes. Yes, Your Honor. Okay. So he wasn't converting the funds then? No. And again, if you look at Judge Harrison's order, I think he makes it very clear that he did not base the conversion on that. When did the conversion take place? The conversion occurred when the mobile home was sold the second time without the bank or Ms. Haas ever being placed in the chain of title such that those monies were not required to satisfy the underlying loan. At that point, he had taken loan money that Ms. Haas had rights and responsibilities in, that the bank had an interest in, and converted it into his profit that no one, these other parties had a right to. So the minute he obtained the check for what was it, $25,000? $25,000 on the subsequent sale, which was in July of 2008. How did the trial court address the issue that he was prevented from completing the demolition of the mobile home by the plaintiff and therefore he had to sell it? Yes, Your Honor. And when you look at the original question of where the breach occurred on the underlying complaint, the court did find that there was a breach on that particular day and that Mr. Story had to leave the property. However, the court also said that subsequent to that, once that original contract was terminated, the court made a specific factual finding that Mr. Story attempted to obstruct, I'm sorry, obstruct was the word that Judge Harrison used, obstruct every attempt for any other way for this process to be concluded. Ms. Haas was still willing to fulfill her portions of the obligation. They sent another person out there to see if they could deliver it and work something out. Mr. Story told her previous attorney that mobile home was not leaving this property. So, yes, the court did find that it was essentially a cover sale at some point for him to obtain his additional losses. But at that point, he never refunds any amount of money. He never gives one penny back to the bank, one penny back to the plaintiff and rather continues to hold it. And the court did also find that he played into that and did not allow him his complete plaintiff's first set off because they said you had these other opportunities to get the mobile home off of your lot and onto Mrs. Haas' lot and you were the one who refused to work out any of those conditions. Appellant will phrase it as they couldn't come to an agreement, specifically in the factual findings in the order it says that he obstructed every opportunity that they raised to try and do it, that he refused to comply with those requests. Very briefly, in addition to the issue of the actual compensatory damages, as a secondary issue, under the Consumer Fraud Act, you do have to look to, of course, the total nature of what we have going on here. And the reason that the court found, both under the conversion and the Consumer Fraud Act, that there were punitive damages incurred here was the court felt that Mr. Story openly held these funds hostage. That was, again, a specific ruling, that he took both the loan proceeds, the mobile home, and held them hostage for this entire time until the court could make this determination. And that he did so with knowledge of having been in the mobile home industry since 1967, that he understood and knew the process for how liens were recognized on title, that mobile homes were titled similar to motor through the Motor Vehicle Code. He testified to all of this knowledge below. But then at trial, attempted to claim that because he had lost his license, his dealer's license, because of other past felony convictions having to do with security agreements, that he no longer had these obligations. And the court in Judge Harrison simply said you can't turn a blind eye to that. You can't take advantage that you hold yourself out as an expert or as a dealer, say that you're going to do these things, and then ultimately say you don't have to do them because you've lost your license to your own detriment. So there were many factors that the court took into account in determining whether or not there were actually fraudulent activities here that were committed willfully in disregard of the plaintiff's rights. And the court found that that was substantiated here, that he had acted willfully against her rights. Additionally, the appellant also appears to be suggesting that the award of attorney's fees is inappropriate here. And I understand that his position is that if there's no compensatory damages, we never arrive at the issue of attorney's fees. But to the extent that the appellant would attempt to argue for a reduction in these attorney's fees, that is not an issue that has ever been preserved on appeal. There's been no discussion that the amount of the attorney's fees is inappropriate as compared to the underlying complaint or what was involved in those clauses of action. So I would simply ask that the court not consider a reduction because that's not been preserved or presented here. In conclusion, the appellee respectfully requests this court to affirm the circuit court's judgment in all respects before today in that Ms. Haas has established a prima facie case of conversion in that she had actual damages and that there was willful and wanton conduct committed by the story defendants and that she had rights in those loan proceeds. She was the one who had the rights in the proceeds. If Ms. Haas doesn't have the rights to the loan proceeds here, nobody does. It's her name that's on that signature line. And that an award of punitive damages and attorney's fees was proper because Ms. Haas established actual damages under both the conversion count and consumer fraud claim and established the fraudulent acts that were in willful disregard of Ms. Haas' rights. So the appellee will ask the court to affirm the trial court's judgment for conversion, awarding actual damages and providing $15,000 in punitive damages, and will also ask the court to affirm the court's judgment under the Consumer Fraud Act, awarding her actual damages of the $24,500 loan replaint applied to her loan obligation with punitive damages of $25,000 and the attorney's fees of $10,000, which was previously awarded. Additionally, the appellee further requests that upon the affirmance of the trial court's decision that the court remand this for a petition for further attorney's fees for those costs that have been incurred in the post-judgment and in prosecuting this appeal, which is appropriate under the line of cases discussing attorney's fees under the Illinois Consumer Fraud Act. Okay. I've got one question. Yes. When you said actual damages those two times, there's no number that you put next to that, though. Yes, the $24,500 in the satisfaction of the loan proceeds. Which he's going to pay directly to Staunton Bank. Okay. And if there were any payments to the bank. But none of that money is going to your client. Well, unless, well, and that is a question that has to be worked out because, in fact, she did make some direct payments to the bank, and the bank is not to retain in excess. But that number is not in the judgment. Well, it's addressed in the judgment under Paragraph 2 of Count C, where the judge says that any payment she made should be reimbursed directly to her less from the $24,500. So in no event should he have to pay more than $24,500 plus the post-judgment and pre-judgment. Because that was because a judgment was entered in favor of the bank and against him. Correct. And there was a judgment in favor of her and against the bank for zero, that she doesn't have to pay anything by the court's order. And there was also the judgment under the conversion count in favor of plaintiff and against Mr. Stork. That was plaintiff's cause of action directly against Mr. Stork. So she will get actual damages on the conversion, $24,500? No, Your Honor. We're not asking that she be paid that. We're asking that it be paid to the bank as directed in the court's order, but that if there is any amount that she paid in addition to that toward the loan, the court addressed that that should come back to her. But it would never exceed the $24,500. But that's up to the bank to pay it back to her. And Judge Harrison was not clear on how that would, how the logistically that would work, but I would assume that once Mr. Stork has paid the money to the bank, that the bank will make those adjustments once those monies have been paid. Thank you. Thank you. Thank you, counsel. Counsel? Thank you. What do you think on the title now? I remember she said that you didn't have the title. Did it? One, I would have to refer back to the record. And if it's an inaccuracy, I apologize. That's all right. I just wondered if it changed your mind. Go ahead. Address some of the issues that the Pelley's argument. What the Pelley's asking for is windfall. They're asking for not only does she get out of the loan, but she also gets money on top of that. That's a windfall. That's not what the court, if you look at the jurisdiction, or any of the cases I cite in the court or in the brief, say. You're not supposed to get windfall. Well, you could say that about any punitive damages then, that punitive damages are a windfall. But when we're looking at actual, when there is no actual damages, and this is my point. Hopefully I can address it. There is no actual damages in this case. The court says in count three that if we go a page back, we look at count two, it says plaintiff is no longer responsible for this loan. So even if count three is correct, she was no longer responsible because of a separate cause of action that she had against the bank. When he sold the mobile home the second time, I'll call it, did he pay the money to the bank? He did not. But if we just look at the, if we look at just the separate, the one count of the action of cause versus effect, and we eliminate the story all throughout this case. And if she just sues the bank and says I'm no longer responsible because of your actions, she's no longer responsible. The court would have found in her favor that she's not responsible for these loan proceeds. So if we just look at just the bank, she's not liable. And the court would have found that she's not liable in that case because of the actions of the bank. So who truly has the, who has the necessary interest? Who has the interest in this case? And I believe it's the bank because it's a bank proceed. And the court clearly said in the bank of law, banks should not be, should not be paid. So if we look at count two and go back to count three where it's duplicated. You indicated the trial court only awarded injunctive relief to the. I was referring to. I was wondering what are you referring to? Yes. In the report of proceeds, the court said if I made a mistake, let the appellate court make the decision and tell me I'm wrong. So, so instead of, instead of saying I'm wrong, he put, placed the burden on, on you three to make this determination and said, you know, if I'm wrong, go to the appellate court. Let them make the decision. So he says, I'm not going to do anything. But look at his comments. His comments say, you know, I believe this is injunctive relief. I believe these are, you know, these are the steps. What's the injunctive relief, though? What did he believe? What is it? Is relieving Mrs. Haas of the obligation to the bank. Okay. So which constitutes a bond and which constitutes a conductory damage? I don't believe so. That's my view. Because, you know, there was no award, you know, like I said, going back to the beginning of my argument, the banks, you know, Mrs. Haas' separate cause of action eliminates the obligation between Mrs. Haas and the bank. If we look at, opposing counsel says, you know, that the bank is obligated to pay back whatever Mrs. Haas paid. Well, what obligations? What in the record shows that there was a demand? We look at, if we look at, if it points you to, and I can't cite it to the record because I didn't think about having that cited. But if we look at the bank and what the bank said, the bank said, we're not, we didn't collect on this. We weren't going to pursue it. If anything, we were going to pursue Mike's story. So Mrs. Haas, you know, the bank was essentially aligning with Mrs. Haas because the bank wants their money back. So just to quickly summarize, we asked the court to affirm, or not to affirm, to reverse the opinion of the court and find that there was no actual damages awarded and enter no judgment or zero judgment in favor of Mrs. Haas. Thank you, counsel. We appreciate it. Excuse me. The briefs, arguments, and counsel, and we will take this case under advisement.